UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYLER TOTARAM a/k/a TYLER A. TOTARAM a/k/a TYLER ALEXANDER TOTARAM, | Civil Action Case No.: 2:24-cv-07304 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| WELLS FARGO BANK, N.A.; BANK OF AMERICA, N.A.; TRANS UNION LLC a/k/a TRANSUNION; EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES LLC, | |
| Defendants. | |

Plaintiff Tyler Totaram a/k/a Tyler A. Totaram a/k/a Tyler Alexander Totaram ("Plaintiff"), by and through his attorneys, Petroff Amshen LLP, as and for his complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.      Plaintiff brings this action for damages arising under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq.*) and its implementing Regulation V (12 C.F.R. Part 1022), Fair Debt Collection Practices Act ("FDCPA") and its implementing Regulation F (15 U.S.C § 1692, *et seq.* and 12 C.F.R § 1006.1, *et seq.*), and New York General Business Law ("GBL") which codifies New York's Fair Credit Reporting Act (the "NYFCRA") (GBL § 374, *et seq.*), resulting from Defendants' willful and ongoing violations of consumer credit protection laws, including failure to investigate and correct inaccurate credit reporting resulting from identity theft, and unlawful attempts to collect on a fraudulent debt.

2.      Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner

which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ."  15 U.S.C. § 1681.

3.    Thus, because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," Congress determined that the protections of the FCRA were necessary "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  *See id.*

4.    The FCRA also imposes a duty upon the furnishers of information to consumer reporting agencies to provide accurate information relating to consumers, and to correct and update any consumer information the furnisher determines is incomplete or inaccurate.  *See* 15 U.S.C. § 1681s-2.

## **PARTIES**

5.    Plaintiff is an individual and resident of the State of New York, County of Nassau, residing at 1483 Adams Street, Elmont, New York 11003.

6.    Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association, organized and existing under the laws of the United States of America, with its principal place of business at 101 North Phillips Avenue, Sioux Falls, South Dakota 57104, and New York headquarters at 30 Hudson Yards, New York, New York 10001.

7.    Defendant Bank of America, N.A. ("BANA") is a national banking association, organized and existing under the laws of the United States of America, with its principal place of business at 100 North Tryon Street, Suite 170, Charlotte, North Carolina 28202, and New York headquarters at One Bryant Park, 115 West 42nd Street, New York, New York 10036.

8.      Defendant Trans Union LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 6066, and registered agent for service in New York c/o The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York 12207-2543.  The company is also known as "TransUnion", and shall be referred to as such herein.  TransUnion is one of the three national credit reporting agencies ("CRAs") recognized by the Federal Trade Commission ("FTC").

9.      Defendant Experian Information Solutions, Inc. ("Experian") is a corporation organized under the laws of the State of Ohio, with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626, and registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.  Experian is a wholly owned subsidiary of Experian Holdings, Inc.  Experian is one of the three national CRAs recognized by the FTC.

10.     Defendant Equifax Information Services LLC ("Equifax") is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309, and registered agent for service in New York c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.  Equifax is a wholly owned subsidiary of Equifax Inc.  Equifax is one of the three national CRAs recognized by the FTC.[1]

## **JURISDICTION**

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

---

[1] TransUnion, Experian, and Equifax shall be referred to collectively herein as the "Defendant CRAs."

12.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiff resides in this district.

**STATEMENT OF FACTS**

13.     Plaintiff is a longtime resident of Nassau County, New York.  When Plaintiff moved to Florida for a brief period in 2021, however, he fell victim to identity theft, and his name and credit were fraudulently used to open accounts and make unauthorized purchases.



14.     Plaintiff lived in Florida from February 2021, through July 2021, at 1810 Partin Terrace Road, Kissimmee, Florida 34744 (the "Florida Address").  Plaintiff also maintained a Florida driver's license with the Florida Address for that time period, which was issued on February 3, 2021. During that time, an unknown identity thief used Plaintiff's personal information, without his knowledge or authority, to open a Wells Fargo account in Plaintiff's name.



6

**A.    Inaccurate Credit Reporting of Unauthorized and Fraudulent Accounts, Addresses, and Purchases in Plaintiff's Name.**

15.    Upon information and belief, the fraudulent Wells Fargo account was opened by an unknown and unauthorized individual, on or about March 18, 2021.  The very next day, an unknown individual used the fraudulent Wells Fargo account to make a fraudulent and unauthorized purchase in Plaintiff's name, in the amount of $25,200.00.

16.    Upon information and belief, the unauthorized purchase was made at a diamond outlet in New Jersey, on March 19, 2021.  On that date, Plaintiff was not in New Jersey, as he was living thousands of miles away in Florida.

17.    Plaintiff did not make, authorize, or benefit from the purchase, and he did not discover it until he discovered the fraudulent Wells Fargo account appearing on his credit report years later, in or about April 2024.  By that time, the fraudulent Wells Fargo account was reporting a delinquent debt in Plaintiff's name in the amount of $25,489.00.

18.    Plaintiff had no prior knowledge of the fraudulent Wells Fargo account in his name, or the debt it had accrued, as he never received any correspondence or notices from Wells Fargo regarding the account.  Upon information and belief, the identity thief who used Plaintiff's information to open the fraudulent account also provided a fraudulent address, in order to prevent Plaintiff from discovering it.

19.    Accordingly, Plaintiff also discovered two alternate addresses he did not recognize appearing on his credit report (the "Fraudulent Addresses"): (i) 28 Beverly Ave. A, Lansdowne, PA 19050, a/k/a 28 Beverly Ave. East, Lansdowne, PA 19050-2711, a/k/a 28 Beverly Ave., Lansdowne, PA 19050; and (ii) 12050 Helvick Crescent Ave., Houston, TX 77051-3284.

20.    Notably, the Fraudulent Addresses appear to have been added to Plaintiff's credit report in or about February 2021, immediately prior to the opening of the fraudulent Wells Fargo

account, and while he was living in Florida.  Additionally, despite having a Florida driver's license with the Florida Address issued on February 3, 2021, Plaintiff's Florida Address is not reflected on Plaintiff's credit report as issued by any of the Defendant CRAs.

21.     Plaintiff does not live at either of the Fraudulent Addresses, nor has he ever lived at either address.  Plaintiff has never been to the Fraudulent Addresses, and he has never used the Fraudulent Addresses for mailing or for any other purpose.  In fact, the Fraudulent Addresses are located in states Plaintiff has never lived in – Pennsylvania and Texas.

22.     Despite the discrepancy in addresses, and use of the fraudulent Wells Fargo account to make a large, luxury purchase out of state the day after opening the account, upon information and belief, neither Wells Fargo, nor any of the Defendant CRAs, flagged any suspicious activity on the account or on Plaintiff's credit report.

23.     Further, given that Wells Fargo continues to report the debt as "past due" and "charged off," it also did not take any steps to block the fraudulent purchase, or secure the account, at the time the fraudulent purchase was made.

24.     In or about April 2024, Plaintiff also discovered an unauthorized BANA account on his credit report in "collection/chargeoff" status, listing him as an "authorized user" on the account.  Plaintiff did not open or authorize a BANA account in his name, nor did he provide his information to any individual or authorize anyone to add him to an existing BANA account.

25.     Plaintiff does not know who opened the BANA account and added him as an "authorized user," or how this unknown individual obtained Plaintiff's personal information to do so.  Plaintiff has never used the unauthorized BANA account, or benefitted from any purchases made with the account.  Plaintiff has never received any correspondence or notices from BANA

regarding the account, and he was unaware that it even existed until discovering it on his credit report in or about April 2024.

26.    On Plaintiff's Three Bureau Credit Report dated April 10, 2024, TransUnion and Equifax both reported the unauthorized BANA account in "derogatory" status, with a past due balance of $997.00, while Experian did not report any information on the BANA account. Additionally, TransUnion and Equifax each reported completely different, and seemingly unrelated, account numbers for the same BANA account.

| BK OF AMER | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | 62** | | 440066743865**** |
| Account Type: | Revolving | | Revolving |
| Account Type - Detail: | Credit Card | | - |
| Bureau Code: | Authorized User | | Authorized User |
| Account Status: | Derogatory | | Derogatory |
| Monthly Payment: | $0.00 | | $0.00 |
| Date Opened: | 05/31/2011 | | 05/01/2011 |
| Balance: | $997.00 | | $997.00 |
| No. of Months (terms): | 0 | | 0 |
| High Credit: | $2,995.00 | | $997.00 |
| Credit Limit: | $10,000.00 | | $0.00 |
| Past Due: | $997.00 | | $997.00 |
| Payment Status: | Collection/Chargeoff | | Collection/Chargeoff |
| Last Reported: | 03/24/2024 | | 03/01/2024 |
| Comments: | Charged off as bad debt Canceled by credit grantor | | Charged off account Accounts closed by credit grantor |
| Date Last Active: | 02/17/2021 | | 12/01/2022 |

**B.    Plaintiff's Notices of Dispute.**

27.    On April 22, 2024, Plaintiff mailed a written notice of dispute to Equifax and TransUnion (the "First Notice of Dispute"), advising of the error in reporting him as an authorized user on the BANA account, and requesting an investigation and correction to his credit report. A true and correct copy of the First Notice of Dispute, with proof of mailing/delivery and without enclosures, is annexed hereto as **Exhibit A**.

28.    In connection with the First Notice of Dispute, Plaintiff provided his name, address, date of birth, social security number, and all necessary information to identify the unauthorized

account and items in error; and enclosed copies of Plaintiff's proof of address and personal identification. *See* Ex. A.

29.     Subsequent Three Bureau Credit Reports Plaintiff obtained dated July 12, 2024, and September 3, 2024, reflect that Equifax discontinued reporting the BANA account, but TransUnion continued improperly and inaccurately reporting the BANA account on Plaintiff's credit report, while also updating and changing the account number associated with the account to match the account number previously reported by Equifax.

| BK OF AMER | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | 440066743865**** | | |
| Account Type: | Revolving | | |
| Account Type - Detail: | Credit Card | | |
| Bureau Code: | Authorized User | | |
| Account Status: | Derogatory | | |
| Monthly Payment: | $0.00 | | |
| Date Opened: | 05/31/2011 | | |
| Balance: | $997.00 | | |
| No. of Months (terms): | 0 | | |
| High Credit: | $2,995.00 | | |
| Credit Limit: | $10,000.00 | | |
| Past Due: | $997.00 | | |
| Payment Status: | Collection/Chargeoff | | |
| Last Reported: | 06/25/2024 | | |
| Comments: | Charged off as bad debt Canceled by credit grantor | | |
| Date Last Active: | 02/17/2021 | | |
| Date of Last Payment: | 12/28/2022 | | |

| BK OF AMER | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | 440066743865**** | | |
| Account Type: | Revolving | | |
| Account Type - Detail: | Credit Card | | |
| Bureau Code: | Authorized User | | |
| Account Status: | Derogatory | | |
| Monthly Payment: | $0.00 | | |
| Date Opened: | 05/31/2011 | | |
| Balance: | $997.00 | | |
| No. of Months (terms): | 0 | | |
| High Credit: | $2,995.00 | | |
| Credit Limit: | $10,000.00 | | |
| Past Due: | $997.00 | | |
| Payment Status: | Collection/Chargeoff | | |
| Last Reported: | 08/24/2024 | | |
| Comments: | Charged off as bad debt Canceled by credit grantor | | |
| Date Last Active: | 02/17/2021 | | |
| Date of Last Payment: | 12/28/2022 | | |

30.     Upon information and belief, Equifax and/or TransUnion failed to notify BANA of their receipt of the First Notice of Dispute, and/or BANA did receive the First Notice of Dispute, but failed to investigate or correct the completeness and accuracy of the disputed information.

31.     Upon information and belief, BANA has continued furnishing inaccurate information to the Defendant CRAs attributing responsibility for the unauthorized BANA account, and the associated delinquent debt, to Plaintiff.

32.     While Equifax has ceased reporting this inaccurate information on Plaintiff's credit report, TransUnion has failed and refused to do so, and continues negative credit reporting

concerning the unauthorized BANA account on Plaintiff's credit report, causing significant damage to Plaintiff's credit and finances.

33.    On July 18, 2024, Plaintiff mailed a written notice of dispute to each of the Defendant CRAs (the "Second Notice of Dispute") regarding the fraudulent Wells Fargo account and inaccurate credit reporting associated with the fraudulent debt, and the Fraudulent Addresses appearing on his credit report.  Plaintiff further advised that he was the victim of identity theft, provided a copy of the identity theft report he filed with the FTC, and requested an investigation and correction to his credit report.  A true and correct copy of the Second Notice of Dispute, with proof of mailing/delivery and without enclosures, is annexed hereto as **Exhibit B**.

34.    In connection with the Second Notice of Dispute, Plaintiff provided his name, address, date of birth, social security number, and all necessary information to identify the fraudulent account and items in error; and enclosed copies of Plaintiff's identity theft report filed with the FTC, police report filed with the Nassau County Police Department, proof of address, and personal identification.  *See* Ex. B.

35.    Although the Second Notice of Dispute requested an investigation and corrections to Plaintiff's credit report, along with a written response and documentation detailing the outcome of the investigation, the Defendant CRAs failed to undertake a timely or proper investigation into the identity theft and fraudulent account/transactions, and did not provide the requested response.

36.    Upon information and belief, the Defendant CRAs further failed to notify Wells Fargo of their receipt of the Second Notice of Dispute, and/or Wells Fargo did receive the Second Notice of Dispute, but failed to investigate or correct the completeness and accuracy of the disputed information.

37.     Upon information and belief, Wells Fargo has continued furnishing inaccurate information to the Defendant CRAs attributing responsibility for the fraudulent Wells Fargo account, and the associated delinquent debt, to Plaintiff.  Upon further information and belief, the Defendant CRAs have continued inaccurately reporting the fraudulent account and associated debt as delinquent and attributable to Plaintiff, causing significant damage to Plaintiff's credit and finances.

38.     Upon information and belief, Wells Fargo and/or BANA have also continued furnishing inaccurate information to the Defendant CRAs associating Plaintiff with the Fraudulent Addresses, and the Defendant CRAs have continued inaccurately reporting the Fraudulent Addresses on Plaintiff's credit reports.

## <u>VIOLATIONS OF THE FCRA</u>
### (15 U.S.C. § 1681, *et seq.*)

39.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

40.     Plaintiff is a "consumer" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(c).

41.     Wells Fargo and BANA are "furnishers" of information to consumer reporting agencies, with a duty to fulfill the statutory responsibilities enumerated under 15 U.S.C. § 1681s-2, including providing accurate information relating to consumers.

42.     Wells Fargo and BANA are also each a "person" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(b).

43.     Subpart E of Regulation V, the FCRA's implementing regulation, applies to furnishers of information, including Wells Fargo and BANA.  *See* 12 C.F.R. §§ 1022.1, 1022.40.

44.     Each of the Defendant CRAs is a "consumer reporting agency" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(f).

45.     The Defendant CRAs each individually qualify as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by the FCRA. *See* 15 U.S.C. §1681a(p).

## COUNT I
**Willful Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(15 U.S.C. §§ 1681s-2, 1681n)**
*As To Wells Fargo and BANA*

46.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

47.     The FCRA prohibits furnishers from reporting information to a CRA "with actual knowledge of errors" and "after notice and confirmation of errors." *See* 15 U.S.C. § 1681s-2(a)(1).

48.     Specifically, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(A). "The term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).

49.     Regulation V provides that "[e]ach furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency," and "review its policies and procedures required by this section periodically and update them as necessary to ensure their continued effectiveness." *See* 12 C.F.R. § 1022.42.

50.     Regulation V defines "accuracy" as:

[I]nformation that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer [that] correctly: (1) [r]eflects the

terms of and liability for the account or other relationship; (2) [r]eflects the consumer's performance and other conduct with respect to the account or other relationship; and (3) [i]dentifies the appropriate consumer.

12 C.F.R. § 1022.41(a).

51.    Additionally, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if -- (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(B).

52.    "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3).

53.    Upon receipt of notice of a dispute regarding the completeness or accuracy of information provided to a CRA under 15 U.S.C. § 1681i(a)(2), a furnisher of the disputed information must conduct a timely investigation and correct and discontinue any inaccurate reporting. *See* 15 U.S.C. § 1681s-2(b).

54.    A furnisher who receives an identity theft report from a consumer is also prohibited from furnishing information to a CRA that is the result of such identity theft. *See* 15 U.S.C. § 1681s-2(a)(6)(B).

55.    In the Notices of Dispute sent to the Defendant CRAs, Plaintiff disputed the fraudulent Wells Fargo account and unauthorized BANA account, their associated delinquent debts, and the Fraudulent Addresses. Plaintiff also filed an identity theft report with the FTC, which was included with the Second Notice of Dispute.

56.     Upon information and belief, Wells Fargo received notice of Plaintiff's Notices of Dispute regarding the accuracy of information it furnished to the Defendant CRAs concerning Plaintiff, the fraudulent Wells Fargo account, and the Fraudulent Addresses.  Upon further information and belief, Wells Fargo also received the identity theft report Plaintiff filed with the FTC and included with the Second Notice of Dispute.

57.     Upon information and belief, BANA received notice of Plaintiff's Notices of Dispute regarding the accuracy of information it furnished to the Defendant CRAs concerning Plaintiff, the unauthorized BANA account, and the Fraudulent Addresses.  Upon further information and belief, BANA also received the identity theft report Plaintiff filed with the FTC and included with the Second Notice of Dispute.

58.     Wells Fargo failed to review information provided by Plaintiff in connection with the Notices of Dispute, and failed to contact Plaintiff for any additional information.  Wells Fargo also deliberately failed and refused to conduct a proper or timely investigation of Plaintiff's dispute, or to correct the disputed information.

59.     BANA failed to review information provided by Plaintiff in connection with the Notices of Dispute, and failed to contact Plaintiff for any additional information.  BANA also deliberately failed and refused to conduct a proper or timely investigation of Plaintiff's dispute, or to correct the disputed information.

60.     Upon information and belief, Wells Fargo furnished inaccurate information regarding Plaintiff, the fraudulent Wells Fargo account, and the Fraudulent Addresses to the Defendant CRAs, without notice that the information was disputed, which was then incorporated into Plaintiff's credit reports issued by the Defendant CRAs.

61.     Wells Fargo also improperly furnished information to the Defendant CRAs that was the result of identity theft.

62.     The inaccurate information included: (i) attributing the fraudulent Wells Fargo account and resulting debt and delinquency to Plaintiff, who had no knowledge of the account, and did not authorize or benefit from it; (ii) attributing one or both of the Fraudulent Addresses to Plaintiff; (iii) misrepresenting the account balance on the fraudulent Wells Fargo account by including the disputed, fraudulent charges, and related improper fees and interest; and (iv) reporting the fraudulent account as past due, in Plaintiff's name, as a result of the disputed charges.

63.     Upon information and belief, BANA furnished inaccurate information regarding Plaintiff, the unauthorized BANA account, and the Fraudulent Addresses to the Defendant CRAs, without notice that the information was disputed, which was then incorporated into Plaintiff's credit reports issued by the Defendant CRAs.

64.     BANA also improperly furnished information to the Defendant CRAs that was the result of identity theft.

65.     The inaccurate information included: (i) attributing the unauthorized BANA account and resulting debt and delinquency to Plaintiff, who had no knowledge of the account, and did not authorize or benefit from it; (ii) attributing one or both of the Fraudulent Addresses to Plaintiff; (iii) misrepresenting the account balance on the unauthorized BANA account by including the disputed, fraudulent charges, and related improper fees and interest; and (iv) reporting the unauthorized account as past due, in Plaintiff's name, as a result of the disputed charges.

66.     Upon information and belief, Wells Fargo has continued inaccurately reporting information to the Defendant CRAs regarding the fraudulent Wells Fargo account and the

Fraudulent Addresses, including information resulting from the identity theft, in violation of 15 U.S.C. § 1681s-2.

67.     Upon information and belief, BANA has continued inaccurately reporting information to the Defendant CRAs regarding the unauthorized BANA account and the Fraudulent Addresses, including information resulting from the identity theft, in violation of 15 U.S.C. § 1681s-2.

68.     Wells Fargo's deliberate and ongoing furnishing of inaccurate and disputed information regarding Plaintiff, the fraudulent Wells Fargo account, and the Fraudulent Addresses has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

69.     BANA's deliberate and ongoing furnishing of inaccurate and disputed information regarding Plaintiff, the unauthorized BANA account, and the Fraudulent Addresses has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

70.     As a result of Wells Fargo's willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery

and defense of improper collection activities; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

71.     As a result of BANA's willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

### COUNT II
### Negligent Reporting of Inaccurate Information to Consumer Reporting Agencies
### (15 U.S.C. §§ 1681s-2, 1681o)
### *As To Wells Fargo and BANA*

72.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73.     Upon information and belief, Wells Fargo "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about [its] transactions or experiences with any consumer." *See* 15 U.S.C. § 1681s-2(a)(2).

74.     Upon information and belief, BANA "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about [its] transactions or experiences with any consumer." *See* 15 U.S.C. § 1681s-2(a)(2).

75.     Upon information and belief, Wells Fargo furnished inaccurate information regarding Plaintiff, the fraudulent Wells Fargo account, and the Fraudulent Addresses to the Defendant CRAs, which was incorporated into Plaintiff's credit file and credit reports. Wells Fargo knew or, if it had conducted the required investigation, should have known, that the information it furnished to the Defendant CRAs was inaccurate and the result of identity theft.

76.     Upon information and belief, BANA furnished inaccurate information regarding Plaintiff, the unauthorized BANA account, and the Fraudulent Addresses to the Defendant CRAs, which was incorporated into Plaintiff's credit file and credit reports.  BANA knew or, if it had conducted the required investigation, should have known, that the information it furnished to the Defendant CRAs was inaccurate and the result of identity theft.

77.     As a compiler and furnisher of consumer information concerning its accounts, Wells Fargo had a duty to ensure the accuracy of any such information furnished to the Defendant CRAs, and to prevent the furnishing of information resulting from identity theft.  *See* 15 U.S.C. § 1681s-2(a)(6).

78.     As a compiler and furnisher of consumer information concerning its accounts, BANA had a duty to ensure the accuracy of any such information furnished to the Defendant CRAs, and to prevent the furnishing of information resulting from identity theft.  *See* 15 U.S.C. § 1681s-2(a)(6).

79.     Upon information and belief, after receiving Plaintiff's Notices of Dispute regarding the identity theft, fraudulent Wells Fargo account, and Fraudulent Addresses, Wells Fargo thereafter negligently failed and refused to conduct any required investigation or to correct the disputed information, and has continued inaccurately furnishing information to the Defendant CRAs regarding the fraudulent account and Fraudulent Addresses, including falsely representing that the account and associated debt are attributable to Plaintiff, in violation of 15 U.S.C. § 1681s-2(a)(2) and 1681s-2(a)(8).

80.     Upon information and belief, after receiving Plaintiff's Notices of Dispute regarding the identity theft, unauthorized BANA account, and Fraudulent Addresses, BANA thereafter negligently failed and refused to conduct any required investigation or to correct the

disputed information, and has continued inaccurately furnishing information to the Defendant CRAs regarding the unauthorized account and Fraudulent Addresses, including falsely representing that the account and associated debt are attributable to Plaintiff, in violation of 15 U.S.C. § 1681s-2(a)(2) and 1681s-2(a)(8).

81.    Upon information and belief, Wells Fargo has further negligently persisted in reporting inaccurate information to the Defendant CRAs without providing notice that Plaintiff has disputed such information, in violation of 15 U.S.C. § 1681s-2(3).

82.    Upon information and belief, BANA has further negligently persisted in reporting inaccurate information to the Defendant CRAs without providing notice that Plaintiff has disputed such information, in violation of 15 U.S.C. § 1681s-2(3).

83.    Wells Fargo's negligent and ongoing furnishing of inaccurate and disputed information regarding Plaintiff, the fraudulent Wells Fargo account, and the Fraudulent Addresses has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

84.    BANA's negligent and ongoing furnishing of inaccurate and disputed information regarding Plaintiff, the unauthorized BANA account, and the Fraudulent Addresses has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

85.     As a result of Wells Fargo's negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

86.     As a result of BANA's negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

**COUNT III**
**Willful Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681n)**
***AS TO THE DEFENDANT CRAS***

87.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

88.     The FCRA requires CRAs to block the reporting of information resulting from identity theft when notified by the consumer:

> [A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of-- (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

89.     CRAs are further required to notify the furnisher of such information "(1) that the information may be a result of identity theft; (2) that an identity theft report has been filed; (3) that a block has been requested under this section; and (4) of the effective dates of the block."  15 U.S.C. § 1681c-2(b).

90.     If a CRA declines to block, or rescinds a block, of information resulting from identity theft, it must promptly notify the consumer "in the same manner as consumers are notified of the reinsertion of information under section 1681i(a)(5)(B) of this title."  *See* 15 U.S.C. § 1681c-2(c).

91.     On July 18, 2024, Plaintiff mailed copies of the Second Notice of Dispute addressed to the Defendant CRAs, via certified mail.  *See* Ex. B.  USPS Tracking for the Notice of Dispute confirms each copy was delivered to the Defendant CRAs.  *See id.*

92.     The Second Notice of Dispute included all information and documentation required for an identity theft block under 15 U.S.C. § 1681c-2(a).  *See* Ex. B.

93.     Accordingly, within four (4) business days of receipt of the Second Notice of Dispute, each of the Defendant CRAs was obligated and required to block the reporting of information in Plaintiff's file resulting from the identity theft including, but not limited to, the fraudulent Wells Fargo account, the unauthorized BANA account, and the Fraudulent Addresses.

94.     Upon information and belief, the Defendant CRAs deliberately failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

95.     Upon information and belief, the Defendant CRAs further willfully declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

96.     The Defendant CRAs' willful failure to block the reporting of information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

97.     As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

**COUNT IV**
**Negligent Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681o)**
*AS TO THE DEFENDANT CRAS*

98.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

99.     Upon receipt of the Second Notice of Dispute, each of the Defendant CRAs was obligated and required to block the reporting of information in Plaintiff's credit file resulting from the identity theft.

100.    Upon information and belief, the Defendant CRAs negligently failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

101.    Upon information and belief, the Defendant CRAs further negligently declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

102.    The Defendant CRAs' negligent failure to block the reporting of information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

103.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

### COUNT V
**Willful Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681n)**
*AS TO THE DEFENDANT CRAS*

104.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

105.    "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

106.   The Defendant CRAs each received Plaintiff's Notices of Dispute demonstrating that Plaintiff's credit report contained inaccurate information, and that Plaintiff was the victim of identity theft.

107.   Despite receipt of the foregoing, the Defendant CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff, the fraudulent Wells Fargo account, the unauthorized BANA account, and/or the Fraudulent Addresses.

108.   Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the Defendant CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff, Wells Fargo, or BANA for any additional information that would assist in a reasonable investigation.

109.   Accordingly, the Defendant CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

110.   The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

111.   As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other

professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

**COUNT VI**
**Negligent Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681o)**
*AS TO THE DEFENDANT CRAS*

112.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

113.    Despite receipt of evidence that Plaintiff's credit report contained inaccurate information, the Defendant CRAs failed to establish and follow reasonable procedures to promptly investigate and ensure the accuracy of reported information concerning Plaintiff, the fraudulent Wells Fargo account, the unauthorized BANA account, and/or the Fraudulent Addresses.

114.    Accordingly, the Defendant CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

115.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

<u>COUNT VII</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit File**
**(15 U.S.C. §§ 1681i, 1681n)**
*AS TO THE DEFENDANT CRAS*

116.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

117.    "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A).

118.    This investigation must be completed within thirty (30) days of the CRA's receipt of notice of the dispute.  *See id.*

119.    The CRA must also provide notice of the dispute to any furnisher of the disputed information, within five (5) business days of receipt.

120.    "In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information."  15 U.S.C. § 1681i(a)(4).

121.    Within five (5) business days of completing a reinvestigation, a CRA must provide the consumer with written notice of the results and additional statutory notices.

122.    Upon receipt of Plaintiff's Notices of Dispute, the Defendant CRAs deliberately failed and refused to undertake the required reinvestigation of Plaintiff's credit file, and to ensure

the accuracy of reported information concerning Plaintiff, the fraudulent Wells Fargo account, the unauthorized BANA account, and/or the Fraudulent Addresses.

123.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit file was inaccurate, the Defendant CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

124.    Upon information and belief, the Defendant CRAs deliberately failed to provide notice of Plaintiff's disputes to the furnishers of the disputed information, as required under 15 U.S.C. § 1681i(a)(2).

125.    Upon information and belief, the Defendant CRAs also failed to provide Plaintiff with written notice of the results of the investigation, or any of the additional required statutory notices, in violation of 15 U.S.C. § 1681i.

126.    The Defendant CRAs further deliberately failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, causing Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

127.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files was malicious, intentional, reckless, and willful.

128.    As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including:

(i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

<u>COUNT VIII</u>
**Negligent Failure to Assure Accuracy of Consumer Information in Credit File**
**(15 U.S.C. §§ 1681i, 1681o)**
*As To The Defendant CRAs*

129.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

130.    Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs had a duty to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff, the fraudulent Wells Fargo account, the unauthorized BANA account, and/or the Fraudulent Addresses.

131.    The Defendant CRAs failed to provide notice of Plaintiff's disputes to the furnishers of the disputed information, as required under 15 U.S.C. § 1681i(a)(2).

132.    The Defendant CRAs failed to investigate Plaintiff's dispute or to properly consider the information Plaintiff submitted in connection with the dispute, and further failed and refused to contact Plaintiff, or the furnishers of the disputed information, for any additional information that would assist in a reasonable investigation.

133.    The Defendant CRAs further failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, or to provide Plaintiff with written notice of the results and additional required statutory notices, in violation of 15 U.S.C. § 1681i.

134.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files, and failure to correct inaccurate and

damaging credit information contained in Plaintiff's credit file, has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

135.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## VIOLATIONS OF THE FDCPA AND REGULATION F
### (15 U.S.C § 1692, *et seq.* and 12 C.F.R. § 1006.1, *et seq.*)
#### *AS TO WELLS FARGO AND BANA*

136.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

137.    The FDCPA, codified at 15 U.S.C. § 1692, *et seq.*, was enacted by Congress in 1977 to eliminate abusive debt collection practices, and to promote consistent state action to protect consumers against debt collection abuses.

138.    Regulation F, issued by the CFPB, implements the FDCPA, and is codified at 12 C.F.R. Part 1006.  Regulation F clarifies and expands on the rules that govern debt collectors' practices under the FDCPA.  It provides detailed guidance on how debt collectors must interact with consumers, ensuring transparency and fairness in the debt collection process.

139.    The NY Superintendent of Financial Services has also prescribed regulations applicable to debt collection activities in New York, including substantiation of consumer debts.

*See* 23 N.Y.C.R.R. § 1.1, *et seq.*   Specifically, the Superintendent's regulations require a debt collector to inform a consumer who disputes the validity of a charged-off debt, that the consumer may request substantiation of the debt.   *See* 23 N.Y.C.R.R. § 1.4(a).   Additionally, "[a] debt collector must provide the consumer written substantiation of a charged-off debt within 60 days of receiving a request for substantiation of the debt and must cease collection of the debt until written substantiation has been provided to the consumer."   *See* N.Y.C.R.R. § 1.4(b).

140.    Plaintiff is a "consumer" as defined by the FDCPA.   *See* 15 U.S.C. § 1692a(3).

141.    Upon information and belief, Wells Fargo has retained "debt collector" agents, as defined by the FDCPA, to engage in debt collection activities on its behalf.   *See* 15 U.S.C. § 1692a(6).

142.    As agents of Wells Fargo, the actions of these debt collectors in pursuing collection of the debts allegedly owed to Wells Fargo, while acting on its behalf and at its direction, are attributable directly to Wells Fargo.

143.    Upon information and belief, BANA has retained "debt collector" agents, as defined by the FDCPA, to engage in debt collection activities on its behalf.   *See* 15 U.S.C. § 1692a(6).

144.    As agents of BANA, the actions of these debt collectors in pursuing collection of the debts allegedly owed to BANA, while acting on its behalf and at its direction, are attributable directly to BANA.

## COUNT IX
### Collection of Prohibited Fees
### (15 U.S.C § 1692f and 12 C.F.R. § 1006.22)

145.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

146.    The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt."  15 U.S.C. § 1692f.

147.    Prohibited debt collection conduct under the FDCPA includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

148.    Likewise, Regulation F prohibits the collection of any "interest, fee, charge, or expense incidental to the principal obligation," which is not also "expressly authorized by the agreement creating the debt or permitted by law."  *See* 12 C.F.R. § 1006.22(b).

149.    Wells Fargo has falsely attributed responsibility for the debt on the fraudulent Wells Fargo account to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft, did not authorize the opening of the account, and did not make or benefit from the disputed charges.  Wells Fargo has deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

150.    BANA has falsely attributed responsibility for the debt on the unauthorized BANA account to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft, did not authorize the opening of the account or being added to the account as an "authorized user," and did not make or benefit from the disputed charges.  BANA has deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

151.    Upon information and belief, debt collection agents retained by Wells Fargo have sent notices and statements in Plaintiff's name containing debt collection language and demands for payment of the fraudulent, disputed debts, including improper fees, charges, and interest added to those alleged debts.

152.    Upon information and belief, debt collection agents retained by BANA have sent notices and statements in Plaintiff's name containing debt collection language and demands for payment of the unauthorized, disputed debts, including improper fees, charges, and interest added to those alleged debts.

153.    Collection of fraudulent debt resulting from identity theft, and fees, interest, and charges stemming from the accrual of fraudulent debt, is certainly not expressly authorized or even contemplated by the applicable agreements underlying any of Wells Fargo's or BANA's consumer accounts, nor is it permitted by law.

154.    In any event, Plaintiff has no agreement with Wells Fargo or any responsibility for the fraudulent account debt, as Plaintiff never opened or authorized the opening of an account in his name with Wells Fargo.

155.    Plaintiff also has no agreement with BANA or any responsibility for the unauthorized account debt, as Plaintiff never opened or authorized the opening of an account in his name with BANA, nor did he authorize being added as an "authorized user" on an existing BANA account.

156.    Accordingly, the collection of, or attempt to collect, any such fraudulent debt and related fees, interest, or other charges is expressly prohibited by the FDCPA, and constitutes "unfair or unconscionable means to collect or attempt to collect a[] debt." *See* 15 U.S.C. § 1692f; *see also* 12 C.F.R. § 1006.22(b).

157.    The actions of Wells Fargo and its debt collection agents, and the failure to correct errors in information regarding Plaintiff and the fraudulent Wells Fargo account, despite being notified of such errors, have resulted in the addition of improper and illegal fees, interest, and other charges related to the fraudulent debt, and improper attempts to collect an unauthorized and/or

illegal debt; causing Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

158.    The actions of BANA and its debt collection agents, and the failure to correct errors in information regarding Plaintiff and the unauthorized BANA account, despite being notified of such errors, have resulted in the addition of improper and illegal fees, interest, and other charges related to the fraudulent debt, and improper attempts to collect an unauthorized and/or illegal debt; causing Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

159.    As a result of this conduct in violation of § 1692f(1) and 12 C.F.R. § 1006.22(b), Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1692k, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT X
### Use of False, Deceptive, or Misleading Representations
### (15 U.S.C. §§ 1692e, 1692k)

160.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

161.    The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

162.    Examples of prohibited false or misleading representations include: (i) falsely representing the "character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)); (ii) "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" (15 U.S.C. § 1692e(5)); (iii) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (15 U.S.C. § 1692e(8)); and (iv) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt" (15 U.S.C. § 1692e(10)).

163.    Wells Fargo has falsely attributed responsibility for the fraudulent Wells Fargo account and related debt to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft and did not authorize the opening of the account, and also did not make or benefit from the disputed charges.  Wells Fargo has deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

164.    BANA has falsely attributed responsibility for the unauthorized BANA account and related debt to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft and did not authorize the opening of the account, and also did not make or benefit from the disputed charges.  BANA has deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

165.    Upon information and belief, the debt collection agents retained by Wells Fargo and BANA have sent notices and statements in Plaintiff's name containing debt collection

language and demands for payment of the fraudulent, disputed debts, and misrepresentations regarding the status of the disputed accounts and amounts owed, including that Plaintiff is responsible for payment.

166.    Upon information and belief, the debt collection agents retained by Wells Fargo have failed and refused to discontinue collection activities, despite notice and knowledge of the identity theft and disputed nature of the fraudulent Wells Fargo account and associated debt.

167.    Upon information and belief, the debt collection agents retained by BANA have failed and refused to discontinue collection activities, despite notice and knowledge of the identity theft and disputed nature of the unauthorized BANA account and associated debt.

168.    Upon information and belief, although Plaintiff disputed the validity of the fraudulent Wells Fargo account and associated debt, Wells Fargo's debt collection agents failed to provide written substantiation of the debts within 60 days as required under the NY Superintendent's regulations, and/or failed to cease debt collection activities until such substantiation was provided.  *See* 23 N.Y.C.R.R. § 1.4.

169.    Upon information and belief, although Plaintiff disputed the validity of the unauthorized BANA account and associated debt, BANA's debt collection agents failed to provide written substantiation of the debts within 60 days as required under the NY Superintendent's regulations, and/or failed to cease debt collection activities until such substantiation was provided. *See* 23 N.Y.C.R.R. § 1.4.

170.    Upon information and belief, Wells Fargo has improperly directed its debt collection agents to continue debt collection activities on the fraudulent Wells Fargo account and associated debt, including seeking to collect the fraudulent, disputed debt, and additional improper fees, charges, and interest added to the alleged debt.

171.     Upon information and belief, BANA has improperly directed its debt collection agents to continue debt collection activities on the unauthorized BANA account and associated debt, including seeking to collect the fraudulent, disputed debt, and additional improper fees, charges, and interest added to the alleged debt.

172.     The actions of Wells Fargo, BANA, and their debt collection agents, and the failure to correct errors in information regarding Plaintiff and the disputed accounts, despite being notified of such errors, have resulted in the addition of improper and illegal fees, interest, and other charges related to the fraudulent debt, and improper attempts to collect an unauthorized and/or illegal debt; causing Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

173.     As a result of this conduct in violation of the FDCPA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1692k, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

### COUNT XI
**Use of Unfair or Unconscionable Means to Collect a Debt**
**(15 U.S.C. §§ 1692f, 1692k)**

174.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

175.     The FDCPA prohibits a det collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.

176.    Prohibited collection activity includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

177.    Upon information and belief, debt collection agents retained by Wells Fargo have improperly sought to collect a fraudulent debt from Plaintiff that resulted from identity theft.  Upon further information and belief, Wells Fargo has also added improper and illegal fees, interest, and other charges to the fraudulent debt, thereby further falsely inflating the alleged account balances and amounts owed.

178.    Upon information and belief, debt collection agents retained by BANA have improperly sought to collect a fraudulent debt from Plaintiff that resulted from identity theft.  Upon further information and belief, BANA has also added improper and illegal fees, interest, and other charges to the fraudulent debt, thereby further falsely inflating the alleged account balances and amounts owed.

179.    Upon information and belief, debt collection agents retained by Wells Fargo and BANA have sent notices and statements in Plaintiff's name containing debt collection language and demands for payment of the fraudulent, disputed debts, and misrepresentations regarding the status of the disputed accounts and amounts owed, including that Plaintiff is responsible for payment.

180.    As a result of the foregoing actions, Plaintiff has suffered damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and

other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

181.    As a result of this conduct in violation of the FDCPA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1692k, including: (i) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## STATE LAW CLAIMS

## VIOLATIONS OF N.Y. GENERAL BUSINESS LAW

182.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

183.    Sections 374 through 382-b of Article 25 of the New York General Business Law codify New York's Fair Credit Reporting Act.

184.    Plaintiff is a "consumer" within the meaning of the NYFCRA.  *See* GBL § 380-a(b).

185.    Wells Fargo is a "person" within the meaning of the NYFCRA.  *See* GBL § 380-a(a).

186.    BANA is a "person" within the meaning of the NYFCRA.  *See* GBL § 380-a(a).

187.    Each of the Defendant CRAs is a "consumer reporting agency" within the meaning of the NYFCRA.  *See* GBL § 380-a(e).

## COUNT XII
**Willful Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(N.Y. Gen. Bus. Law § 380-o)**
*AS TO WELLS FARGO AND BANA*

188.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

189.     The NYFCRA prohibits the knowing and willful introduction, or attempt to introduce, false information into a consumer reporting agency's files.  *See* GBL § 380-o(2). Persons who violate Section 380-o are subject to fines of up to $5,000.00, imprisonment, or both. *See id.*

190.     As a result of Wells Fargo's and BANA's knowing and willful introduction of false information regarding Plaintiff's account into the files of the consumer credit bureaus, Plaintiff has suffered damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

191.     As a result of Wells Fargo's and BANA's foregoing conduct in violation of the NYFCRA, Plaintiff has been damaged and is entitled to damages pursuant to GBL § 380-l, including: (i) statutory damages in an amount up to $5,000.00, to be determined by the Court; (ii) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (iii) punitive damages; and (iv) attorneys' fees and costs incurred in connection with this action, in an amount to be determined by the Court.

## COUNT XIII
**Failure to Investigate and Resolve Consumer Dispute**
**(N.Y. Gen. Bus. Law §§ 380-f, 380-m)**
*As To The Defendant CRAS*

192.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

193.    Pursuant to GBL § 380-f(a):

If a consumer disputes any item of information contained in his file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly re-investigate and record the current status of such information, unless it has reasonable grounds to believe that the dispute by the consumer is frivolous, and it shall promptly notify the consumer of the result of its investigation, its decision on the status of the information and his rights pursuant to this section.

194.    If, after conducting the re-investigation, the CRA can no longer verify an item, or confirms an error, the CRA must, among other things: (i) "promptly expunge the item and otherwise correct the file"; (ii) "refrain from reporting the item in subsequent consumer reports"; and (iii) "clearly and conspicuously disclose to the consumer his rights to make a request for notification." *See* GBL § 380-f(b).

195.    Further, "if any item disputed and reinvestigated is found to be in error or can no longer be verified, upon completion of the reinvestigation of all items disputed, the [CRA] shall promptly mail the consumer a corrected written copy of the file, reflecting any changes, with an explanation of any code used, at no charge to the consumer."  GBL § 380-f(d).

196.    Upon receipt of Plaintiff's Notices of Dispute, the Defendant CRAs were obligated to investigate Plaintiff's claims, notify Plaintiff of the results of the investigation, and fulfill any additional requirements of GBL § 380-f.

197.    Upon information and belief, the Defendant CRAs failed to undertake any investigation of Plaintiff's disputes, or to fully or properly review all information provided in

connection with the dispute, and likewise failed to revise or correct all of the inaccurate information contained in Plaintiff's credit file.

198.    Upon information and belief, the Defendant CRAs further failed to notify Plaintiff of the results of their investigation, and/or no such investigation ever took place.

199.    This conduct has caused Plaintiff to suffer damages including loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed debts, fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

200.    As a result of the Defendants CRAs' foregoing conduct in violation of the NYFCRA, Plaintiff has been damaged and is entitled to damages pursuant to GBL § 380-l, including: (i) statutory damages in an amount up to $5,000.00, to be determined by the Court; (ii) actual damages, including but not limited to damages pertaining to securing attorney and other professional representation, and incurring attorneys' fees and costs, to assist with credit recovery and defense of improper collection activities; (iii) punitive damages; and (iv) attorneys' fees and costs incurred in connection with this action, in an amount to be determined by the Court.

201.    The Defendant CRAs are further liable to Plaintiff pursuant to GBL § 380-m, for damages including: (i) actual damages; and (ii) attorneys' fees and costs incurred in connection with this action.

## **DEMAND FOR JURY TRIAL**

202.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages, recovery of attorneys' fees and costs, and any other relief available pursuant to applicable law.

Dated:  Brooklyn, New York
October 17, 2024

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Tyler Totaram a/k/a Tyler A. Totaram a/k/a Tyler Alexander Totaram

*/s/ Steven Amshen*
Steven Amshen, Esq. (ID No. SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com